**FIBREFORM WOOD PRODUCTS, INC., a California corporation, Plaintiff–Counterdefendant–Appellant,**

and

**Leo Seidner, an individual; Marc Seidner, an individual, Counterdefendants–Appellants,**

v.

**LOUISIANA–PACIFIC CORPORATION, a Delaware corporation, Defendant–Counterclaimant–Appellee,**

and

**William Meyer, an individual, Defendant–Appellee.**

No. 00–56518, 00–56248.

D.C. No. CV–99–07306–RSWL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001.

Decided March 12, 2002.

Before BEEZER and WARDLAW, Circuit Judges, and SCHWARZER,* Senior District Judge.

## MEMORANDUM **

Plaintiffs FibreForm Wood Products, Inc. and its cofounders, Leo and Marc Seidner, appeal from the summary judgment dismissing their breach of contract and misrepresentation claims against Louisiana–Pacific Corporation ("L–P"). Because the parties are familiar with the facts, we address only the issues raised by the appeal.

## I. THE BREACH OF CONTRACT CLAIM

■ Plaintiffs contend that there are genuine issues of material fact as to whether the parties formed a joint venture, relying on three bases: (1) the November 3, 1998, nonbinding letter of intent, (2) the February 12, 1999, term sheet, and (3) other circumstances.

### A. *The Nonbinding Letter of Intent (November 3, 1998)*

The nonbinding letter of intent for the formation of a joint venture, signed by the parties on November 3, 1998, listed three conditions: (1) board approval, (2) completion of due diligence "to the sole satisfaction of L–P," and (3) "execution of a definitive agreement to implement the contemplated transaction."

No contract was formed as the result of this letter because none of these conditions was satisfied.

First, the board did not approve the joint venture. The February 24, 1999, board resolution itself conditioned creation of the joint venture on "the satisfactory completion of L–P's due diligence investigation" and the CEO and CFO's "final approval." There is no evidence that the CFO gave final approval, and due diligence was never completed, as explained below.

Second, L–P never completed due diligence. Prior to L–P's termination of negotiations, due diligence uncovered various problems, including concerns about FibreForm's capacity to accommodate projected demand and its failure to provide financial statements for the fourth quarter of 1998.

Third, L–P never executed a definitive implementing agreement. The unsigned term sheet, conditional board approval, and generalized expressions of interest in a joint venture did not eventuate in execution of a definitive agreement.

Thus, the letter of intent could not support a finding that a joint venture was formed.

### B. *The Term Sheet (February 12, 1999)*

■ On February 12, 1999, the parties drafted a seven-page term sheet entitled

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

"Proposed Joint venture between [L–P] and FibreForm," setting forth the "preliminary understandings of the parties," and specifying "further due diligence ... required before a decision is made to pursue the joint venture." L–P's counsel told plaintiffs that if they signed the term sheet and the board approved it, "we'll have a deal." Plaintiffs signed it, but no L–P representative did, and the board never approved it. Since L–P never agreed to the term sheet, it could not support a finding that a joint venture was formed.

### C. *Other Circumstances*

Plaintiffs contend that other circumstances raise a triable issue with respect to formation of a joint venture, pointing to the $500,000 loan and to various statements by L–P employees and a bank officer. Given the undisputed evidence that the conditions the parties had specified as requisite to the formation of a joint venture had not been met, we find this evidence insufficient to raise a genuine issue of material fact.

■ As for the $500,000 loan extended "in conjunction with negotiations between L–P and FibreForm for the establishment of a joint venture," the promissory note clearly contemplated that negotiations were still ongoing on March 1, 1999 (seven days before being broken off). As for the statements and observations cited by plaintiffs, they amount to no more than status reports, predictions and opinions that do not suffice to raise a triable issue as to the existence of a joint venture.

## II. THE INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIM

■ Plaintiffs contend that L–P's representations about its intention to enter into a joint venture misled them and induced them to invest valuable time and to reveal valuable information. But this case simply presents the not uncommon situation of two businesses enthusiastically entering into negotiations for a proposed transaction only to have it collapse in the final stage of negotiation. Plaintiffs were not misled; they knew at all times that, whatever they may have heard from L–P's representatives, there would be no deal until all specified conditions had been met.

## III. THE $500,000 LOAN COUNTER-CLAIM

■ The promissory note conditioned the $500,000 loan to FibreForm on the parties "reach[ing] agreement on the joint venture."5 If they failed to reach such an agreement, and L–P demanded payment thereafter, the loan would be due in thirty days. Plaintiffs do not contest this, contending only that a jury could find that a joint venture existed. Because we reject that contention, summary judgment in favor of L–P was properly granted on this issue. For the same reason, the award of attorneys' fees (the amount of which plaintiffs do not dispute) under the terms of the promissory note must be affirmed.

AFFIRMED.